IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>RUBEN OLIVARES-RODRIGUEZ,<br><br>  Defendant. | No. CR09-4048-DEO<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

"Histories are more full of examples of the fidelity of dogs than of friends." Alexander Pope

The defendant Ruben Olivares-Rodrigues has filed a motion to suppress evidence that requires the court to determine the reliability of a drug detection dog. On September 17, 2009, the grand jury returned an indictment against Olivares charging him with possession of powder cocaine with intent to distribute. Doc. No. 2. Olivares filed his motion to suppress on November 12, 2009. Doc. No. 27. The plaintiff (the "Government") filed a resistance on December 10, 2009. Doc. No. 37.

The undersigned held hearings on the motion on March 12, 2010 and March 18, 2010. Assistant United States Attorney John Lammers appeared on behalf of the Government, and Olivares appeared with his attorney, Assistant Federal Defender Mike Smart. The Government offered the testimony of two witnesses: Sergeant Jim Bauerly of the Woodbury County, Iowa, Sheriff's Department; and Sergeant Edward Joseph Van Buren of the Douglas County, Nebraska, Sheriff's Department. Olivares offered the testimony of Steven Nicely. Four exhibits were admitted into evidence, to-wit: **Gov't Ex. 1** - a DVD containing video of a traffic stop of Olivares's vehicle on August 27, 2009; **Gov't Ex. 2** - Certificate of Certification dated April 26-28, 2009, for "Bosco"; **Gov't**

**Ex. 3** - Certificate of Certification dated April 28-29, 2008, for "Bosco"; and **Defense Ex. A** - Curriculum Vitae of Steven D. Nicely.

Olivares's indictment arose from the discovery of a quantity of powder cocaine found in his 2000 Ford Expedition on August 27, 2009. According to Olivares, he was stopped when Bauerly noticed a large crack that ran through "a large portion" of his windshield, and a broken driver's side mirror. Doc. No. 27-1, p. 1. During the stop, Bauerly learned Olivares's driver's license was suspended, and Olivares was arrested. Bauerly had a K-9 unit with him (Bosco), and he took Bosco around Olivares's vehicle. Bauerly believed Bosco had indicated on the vehicle, suggesting the presence of drugs in the vehicle, so Bauerly opened the tailgate of the vehicle and Bosco entered the vehicle, ultimately leading to the discovery of a quantity of cocaine hidden in a boot. Olivares does not contest the validity of the traffic stop or his arrest. The sole issue in the case is whether or not Bosco indicated on the vehicle, providing probable cause for Bauerly to open the tailgate and search the vehicle's interior. Olivares argues Bosco "made absolutely no indication that there was anything of interest in the vehicle." *Id.*, p. 2.

Both Bauerly and Van Buren are law enforcement officers who handle K-9 units. Both of the officers have extensive training and experience in handling and training drug detection dogs, and in evaluating the skill and reliability of dogs trained by others. Both officers are members of the United States Police Canine Association (USPCA), an organization that certifies detector dogs. Bauerly is a nationally-certified judge with the USPCA, and has supervised the Woodbury County K-9 program since the late 1980s. Van Buren is certified dog trainer and an international judge for the Polizeischutzhundprufung (called "PSP," for obvious reasons), another K-9 training organization that, among other things, certifies detection dogs within the State of Nebraska. He has been a dog handler since 1995. Both officers attend frequent training seminars.

Bauerly explained in detail how a detection dog becomes certified. In addition, he explained the ongoing training provided to detection dogs within his department. Bosco is a "dual-purpose dog," meaning he is certified as both a drug detection dog and a patrol dog. In a typical week, dual-purpose dogs are trained by having them locate four to eight "hides" of drugs in various locations. The trainers use different types of vehicles, "scratch boxes," lockers, and other hiding places in rooms set aside for training. Bauerly began working with Bosco in 2007. Government Exhibits 2 and 3 are Bosco's certificates of certification as a detector dog for 2008 and 2009. Although Bauerly is certified as a trainer and judge, he did not certify Bosco; a handler cannot evaluate or certify the handler's own dog. Bosco was certified most recently in April 2009. Out of a possible 200 points for certification, Bosco scored 197.50 points in 2008, and 163.83 points in 2009. A passing score is 140 points, or 70% of the possible points.

Bauerly described the difference between a drug detections dog's various behaviors when the dog is doing a sniff for drugs. A "response" or an "alert" is a behavior change that may be visible when the dog initially detects the odor of drugs. For example, the dog may perk up its ears, or move its head back and forth trying to find the source. An "indication" is when the dog is actively showing its handler where the drug odor has been detected. Some dogs are "passive" indicators. They may whine, sit, or stop-and-stare at the site where they detect the odor. Other dogs are "aggressive" indicators, and may bite or scratch at the source area, jump up, or whine. Bauerly stated Bosco is an aggressive indicator. He often will whine when he detects a drug odor, and he will jump up and scratch at an area when he is indicating.

Bosco has been used while on actual patrol in the field on fourteen occasions, twice in 2008 and twelve times in 2009. He was present during execution of a search warrant at a residence in 2009, and located drugs in a sofa and in an upstairs bedroom. According to Bauerly, Bosco has had only two errors out of his fourteen searches in the field. In

2008, Bosco indicated on a vehicle in a motel parking lot, but when the vehicle was searched, no drugs were found. However, when officers went to the owner's room at the hotel, they located an empty bag of methamphetamine residue and drug paraphernalia. On another occasion in 2008, both Bosco and another detection dog missed some marijuana that was in a package at a Federal Express site, but officers eventually recovered the marijuana at a later date.

Bauerly stated that out of hundreds of training exercises, Bosco has had only three false indications. On one occasion, Bosco knocked over a filing cabinet in a room. He became excited and gave a false indication on the filing cabinet. On a second occasion, in January 2009, he gave a false indication on a scratch box during training after two other dogs had indicated on the same box. On the third occasion, in April 2009, Bosco indicated on a scratch box that contained a Bounce fabric softener sheet. Bauerly testified that based on his training and experience, he considers Bosco to be a reliable drug detection dog.

In the present case, a video camera in Bauerly's patrol car recorded the scene as Bosco went around and into Olivares's car. *See* Gov't Ex. 1. Bauerly stated Bosco is a very intelligent, high-energy dog who works quickly. When Bosco approached the vehicle, he almost immediately jumped up against the back bumper, gave a quick scratch, and jumped down. He then jumped up and down several more times. Bauerly understood Bosco's actions to be an indication that the dog had caught a drug odor. Bauerly then took Bosco around the car. On the first pass, Bosco jumped up and scratched at the driver's side door handle, which Bauerly took as an indication. The second time around the vehicle, Bosco whined and jumped up just behind the passenger's door. He then sat down, whined, and jumped up again. Bauerly took these actions to be an indication on that area of the vehicle.

Bauerly believed Bosco had indicated three times on the vehicle, giving him probable cause for a further search. He opened the rear of the vehicle and directed Bosco

to jump inside. Before the tailgate was even all the way open, Bosco was jumping excitedly and trying to stick his head inside the vehicle. It was a windy day and the driver's window was down, which Bauerly stated will cause odors to swirl around inside the vehicle. Bosco almost immediately went toward the front of the vehicle, which worried Bauerly because the vehicle was parked alongside a busy highway. Because he feared Bosco might attempt to jump out the open window, Bauerly opened the driver's side door to retrieve the dog. Bosco had picked up something in his mouth from the rear of the truck, and Bauerly directed him to drop the object. Then he took Bosco out through the driver's door, around to the back of the vehicle again, and had him jump back into the vehicle. Bosco searched for a few seconds, biting at an object, and then biting at a boot that was in the back of the vehicle. Bauerly reached into the boot and discovered a quantity of powder cocaine inside. He praised Bosco and put the dog away.

Bauerly testified that he believed Bosco had indicated on the vehicle three times before the tailgate was opened. He further believed Bosco had indicated on the boot before the officer reached into the boot and found the drugs.

Defense witness Nicely holds himself out as a consultant "in matters relating to the training and handling of police service dogs," as well as "[p]roviding behavior modification and general training for pet dog owners." Def. Ex. A, Curriculum Vitae of Steven D. Nicely. He has a high school education and a number of college credits toward completing an Associate's degree in psychology. While he was in the Marine Corps, he was a drug dog handler in connection with some 500 seizures of drugs. He worked in law enforcement briefly after leaving the Marine Corps, and handled a patrol dog (not a drug dog) for a few months in that capacity. He quit actually handling dogs in the field in 1992. He personally has trained about 750 dogs, about 300 of which went to various branches of the military. He has never been certified as a dog trainer or judge by any organization that does police dog certification.

Nicely takes issue with the training and evaluation methods used by the USPCA and PSP. He asserts that the training methods used by every other organization besides his own company are inappropriate because, unlike his methods, the other organizations do not use a behavioral science approach for their training.

In Nicely's opinion, Bosco did not indicate at any point during his search of the vehicle. He stated a well-trained dog will remain focused and stay with the search once he detects an odor. Because Bosco jumped up at the vehicle and back down again, and then left the area, Nicely does not believe the dog indicated. He further testified that in his opinion, Bosco's reactions to certain areas of the vehicle and to the boot were induced by Bauerly, as Bosco's handler. Nicely described how a handler can subconsciously cue an animal. He stated that if the handler has an expectation that something will be present in a particular location, the handler can cue the dog through eye contact, change in breathing, the turn of a head, a glance focused on an object, and other behaviors that can be picked up by the dog but are so subtle that even a trainer watching the dog and handler would not detect them.

Nicely presented videos of two different searches by drug dogs. In both instances, there was very little contact between the handler and the dog, and the handler remained behind the dog, allowing the dog to move around the vehicle. In this case, throughout the time Bauerly was taking Bosco around the vehicle, Bauerly repeatedly tapped the vehicle and said, "Drugs, check!" and "Drugs!" In addition, he walked backwards in front of the dog as they went around the vehicle. According to Nicely, these actions all cued Bosco to give a false indication on those areas. Nicely further testified that Bosco "just stumbled on" the boot containing the drugs, and he stated "with 99% certainty" that the dog never detected the drug odor.

Van Buren disagreed with Nicely's evaluation of what occurred. Van Buren stated that patting the vehicle and saying, "Drugs! Drugs!" is one way of directing the dog to

6

sniff a particular area or vehicle. He has reviewed the video of Bosco's drug search in this case at least five times, and he saw no evidence of cuing by Bauerly. He found Bauerly's actions to be consistent throughout the search. He further opined that if Bauerly were cuing Bosco, then Bosco would have indicated much more often than the few times described by Bauerly.

Van Buren further explained that whether a dog can zero-in on a drug scent easily depends on the environmental conditions, how the drugs are packaged, the dog's experience and age, and other factors. He described testing in which he has participated involving wind currents within a Ford Expedition vehicle with the driver's side window open. A number of plastic bags were placed in the back of the vehicle, and the bags would swirl around when air entered through the driver's side window. When the vehicle's tailgate was opened, not all of the swirling bags would exit through the open tailgate, suggesting the drug odor similarly would continue to swirl around inside the vehicle.

The Eighth Circuit Court of Appeals has held that if a drug detection dog is found to be reliable, then the "dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance[.]" *United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007). The *Olivera-Mendez* court explained further as follows:

> We have held that to establish a dog's reliability for purposes of a search warrant application, "the affidavit need only state the dog has been trained and certified to detect drugs," and "a detailed account of the dog's track record or education" is unnecessary. *[United States v.] Sundby*, 186 F.3d [873,] 876 [(8th Cir. 1999)] (internal citations omitted). The standard is no more demanding where police search an automobile based on probable cause without a warrant. It is undisputed that Ajax [the dog in the *Olivera-Mendez* case] was trained and certified in drug detection, . . . and Ajax's trainer testified that Ajax "certainly doesn't have an issue with false indications." . . . Based on this record, the district court did not clearly err in finding that Ajax was reliable, and police had

7

> probable cause to search the car after he alerted. [Internal citations omitted.]

*Id.*

In *United States v. Donnelly*, 475 F.3d 946 (8th Cir. 2007), the court considered a drug detection dog (Baron) with a less accurate performance record than Bosco's, and held as follows:

> Because Baron's performance record raises questions about his reliability, further inquiry was required. According to the record, non-trace quantities of drugs are discovered at least fifty-four percent of the time that Baron positively indicates their presence in the field. Although Baron may not be a model of canine accuracy, his record is only one of the factors we consider in the totality of the circumstances calculation. Donnelly does not dispute that Baron received consistent training, that Baron had been examined and considered competent by independent evaluators, that he had been properly certified, that he had been considered reliable by prior courts, and that his accuracy rate exceeded fifty percent. Accordingly, taking into account the totality of the circumstances present at the scene of the accident, Donnelly's behavior and condition, Baron's history and pedigree, and Baron's positive indication of drugs within the vehicle, we conclude that there was a fair probability that Donnelly's vehicle contained drugs. Accordingly, [the officer] had probable cause to search Donnelly's car pursuant to the automobile exception to the warrant requirement. *See United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006), *cert. denied*, 75 USLW 3350 (2007).

*Donnelly*, 475 F.3d at 955.

The Eleventh Circuit Court of Appeals has described a certified drug detection dog that was a graduate of the U.S. Canine Academy and Police Dog Training as a "highly trained and credentialed professional whose integrity and objectivity are beyond reproach." *United States v. $242,484.00*, 389 F.3d 1149, 1159 (11th Cir. 2004). The Eleventh Circuit has held further that although "a dog sniff must be sufficiently reliable in order to

establish probable cause, we have held in dicta 'that training of a dog alone is sufficient proof of reliability.'" *United States v. Anderson*, slip op., 2010 WL 597230 at *2 (11th Cir. Feb. 22, 2010) (quoting *United States v. Sentovich*, 677 F.2d 834, 838 n.8 (11th Cir. 1982) "(endorsing the view of the Tenth and First Circuits that training of a dog alone is sufficient proof of reliability)"; other citations omitted).

The court finds that both Bauerly and Van Buren are experts in the field of K-9 training and certification, and the testimony of both officers was entirely credible. The court further finds Bosco is a reliable drug detection dog, and he indicated on Olivares's vehicle and on the boot containing the drugs without cuing from Bauerly. Among other things, the court notes that in order to cue Bosco to indicate on the boot, Bauerly would have had to know in advance that the boot contained drugs, something even Olivares does not argue to be the case here.

The court finds Bauerly reasonably believed that Bosco indicated on the car, giving him probable cause to search the vehicle. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983) (probable cause requires only "a fair probability that contraband or evidence of a crime will be found"). Bosco's actions should not be judged from the perspective of an objective observer, but from his handler's perspective, whose testimony the court credits. Bauerly knows how this particular dog operates. Bosco lives with Bauerly and his family, and the two have worked together for three years.

The court further finds that although Nicely appears to have considerable experience in the area of dog training, his testimony in this case is not entitled to any weight. Indeed, his statement that he was 99% certain the dog just happened to pick up the boot where the drugs were located without picking up any scent from the drugs was ludicrous.

For these reasons, the undersigned respectfully recommends that Olivares's motion to suppress be **denied**. Objections to this Report and Recommendation must be filed by **March 29, 2010**. Responses to objections must be filed by **April 1, 2010**.

**IMPORTANT NOTE:** Any party planning to lodge any objection to this Report and Recommendation must order a transcript of the hearing promptly, but no later than **March 23, 2010**, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 22nd day of March, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT